UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| SEAN L. HADLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No.: 1:01-CV-153 |
| ) | |
| HILDA WILLIAMS, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION AND ORDER**

This matter is before the court on the Motion for Summary Judgment filed by Defendant Hilda Williams ("Williams") on May 11, 2005.  After having been granted an extension of time in which to do so, Plaintiff Sean Hadley ("Hadley") filed a response on August 11, 2005, and Williams filed a reply on August 25, 2005.  For the following reasons, the motion for summary judgment is DENIED.

**FACTUAL BACKGROUND**

Hadley initiated this lawsuit on April 9, 2001, alleging a violation of 42 U.S.C. § 1983.[1]  At the time of the filing of the original Complaint, Hadley was proceeding *pro se*.  Since September 28, 2004, Hadley has been represented by counsel.  This suit arises out of the events surrounding Hadley's arrest on April 6, 1999.  On that day, Hadley was arrested by officers with the Fort Wayne Police Department.  He was arrested at a home owned and occupied by his mother, Sandra Gruber-Hadley ("Gruber-Hadley").  According to Gruber-Hadley, her son sometimes stayed at the house and had some possessions stored there.  It is uncontested that he

---

[1] Hadley initiated this lawsuit by filing a motion to proceed *in forma pauperis*.  That motion was granted and Hadley's original Complaint was filed and docketed on July 13, 2001.

did not reside there on any regular basis nor did he have any ownership interest in the home.

Prior to the day Hadley was arrested, officers with the Fort Wayne Police Department, including Williams (a detective with the Department) spoke with Gruber-Hadley and with Pam Hickle, Gruber-Hadley's daughter and Hadley's half-sister. Officers discussed with the two women the fact that Hadley was alleged to have sexually molested minor girls. During the course of one of these conversations–a conversation which is at the heart of the case and this present motion–Detective Williams and Gruber-Hadley discussed arrangements concerning Hadley's imminent arrest. The police knew that Hadley was going to be at his mother's house on a certain day and Williams asked Gruber-Hadley whether police could go to her house to arrest her son. Gruber-Hadley stated in an affidavit and in her deposition testimony that she inquired about the existence of an arrest warrant and was assured by Williams that a warrant existed. Williams contends that she never actually said that police had a warrant and that all she said was that the police had "everything we need" and that "it's all covered."

As stated above, exactly what was said (and what was implied and inferred) during this conversation between Williams and Gruber-Hadley is at the heart of the present motion. A more detailed discussion of this conversation and the facts surrounding Hadley's arrest is presented later in this opinion. The crux of the debate, however, is Hadley's assertion that his constitutional rights were violated on April 6, 1999, when Hickle let police officers into her mother's home, even though they admittedly had no warrant, to arrest Hadley.

This case came before the court once before on a motion for summary judgment filed by Williams on April 30, 2002. The issue at that time was the same–the validity of Hadley's warrantless arrest or, more specifically, whether during her conversation with Gruber-Hadley,

2

Williams misrepresented the situation in order to secure Hadley's arrest.  The court entered an order granting Williams's motion for summary judgment on February 3, 2003.  Hadley appealed that ruling and the Seventh Circuit Court of Appeals reversed.  Essentially, the court of appeals held that Williams's statements and representations to Gruber-Hadley amounted to an outright lie.  The court determined that Gruber-Hadley was actively misled by Williams into allowing police into her home (or making arrangements for Hickle to let them in).  Accordingly, the case was remanded to this court for further proceedings.

Since the case was remanded, the parties have taken depositions and so the record is more fully developed than it was at the time.  Williams contends this changes the playing field completely, while Hadley maintains that the present motion is nothing more than an instant replay of the earlier one.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56©.  However, Rule 56© is not a requirement that the moving party negate his opponent's claim.  *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990).  Rule 56© mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552-53 (1986).  The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which

3

requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 2512; *In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir. 1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir. 1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir. 1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56©, but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt*, 862 F.2d 646, 649 (7th Cir. 1988); *Guenin v. Sendra Corp.*, 700 F. Supp. 973, 974 (N.D. Ind. 1988); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960 (1983).

In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not

weigh the evidence or the credibility of witnesses. *Anderson*, 477 U.S. at 249-251, 106 S. Ct. at 2511. However, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank*, 704 F.2d 361, 367 (7th Cir. 1983).

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Id.* 477 U.S. at 248, 106 S. Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed. R. Civ. P. 56©, (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.*, 860 F.2d 1407, 1411 (7th Cir. 1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S. Ct. at 2512.

## DISCUSSION

Most of the facts underlying this case are not in dispute. What is disputed is exactly what was said during the conversations between Williams and Gruber-Hadley that took place prior to Hadley's arrest. It might be more accurate to state that the dispute involves an interpretation of what was said. Resolution of the present motion essentially turns on what was implied and what was inferred. That, in fact, is the reason the present motion shall be denied, as only a jury can

ultimately determine what the parties truly believed concerning Hadley's arrest and, consequently, whether that arrest violated his Fourth Amendment rights.

Williams contends that Gruber-Hadley and Hickle voluntarily consented to the entry of police officers into Gruber-Hadley's home on the day of Hadley's arrest. Hadley maintains that the consent was coerced, and the Seventh Circuit agreed, at least with respect to the state of the record at the time. According to Williams, the subsequent "deposition testimony [of Gruber-Hadley and Hickle] plainly demonstrates that each of them voluntarily consented to entry into the residence in order to secure Hadley's arrest and that there was no coercion by Detective Williams." Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Memorandum"), p. 3. Williams contends that "[t]he facts now before this Court are substantially different from those upon which the Seventh Circuit reversed summary judgment." *Id*., p. 4.

On the day Hadley was arrested, a police officer called Gruber-Hadley and Hickle in order to confirm that Hadley was present in his mother's home. Gruber-Hadley had told police that she did not want to be present when her son was arrested, but that she would make arrangements for Hickle to be present. When officers showed up at Gruber-Hadley's house, Hickle and Hadley were both there, and were sitting on a couch talking. Deposition of Pamela Hickle, p. 25. At some point, both Hickle and Hadley heard a police radio. *Id*. Hadley allegedly said "I'm not here," and walked to a back bedroom. *Id*., p. 26. When the police knocked on the door, Hickle let them into the home, and Hadley was ultimately arrested without incident. *Id*., pp. 26-28.

6

In its opinion issued on May 14, 2004, the Seventh Circuit concluded that Williams's comments to Gruber-Hadley just prior to Hadley's arrest constituted outright lies which, in turn, resulted in what Hadley maintains was a warrantless, unconsented entry into Gruber-Hadley's home by police. As the Seventh Circuit stated, "as long as Hadley's mother believed the claim [that police had a warrant], and there is no reason to doubt that she did, her consent to the search was involuntary and does not bar a challenge to the lawfulness of the arrest . . . ." *Hadley v. Williams*, 368 F.3d 747, 749 (7th Cir. 2004). As a result of its analysis, the Seventh Circuit likewise held that Williams is not entitled to the defense of qualified immunity. *Id*., at 750. And so, again, the issue to be resolved presently is the extent to which deposition testimony obtained since the Seventh Circuit's opinion changes the landscape of this case.

Gruber-Hadley testified by way of deposition on April 29, 2005. In her memorandum in support of her motion for summary judgment, Williams focuses on specific statements Gruber-Hadley made with regard to the imminent arrest of her son. For example, Williams points out that "Gruber-Hadley did not object to her son being arrested because 'she considered it inevitable and even necessary that he be arrested.'" Memorandum, p. 7 (quoting Dep. of Gruber-Hadley, p. 26). Williams also states that "Gruber-Hadley believed that there was enough evidence for her son to be arrested based upon what she had learned from speaking with various family members." *Id*., p. 8. Williams argues that "Gruber-Hadley did not object to officers coming to her home." *Id*. And, Williams points out that "Gruber-Hadley admits that she gave her daughter the authority to go over to her house to let in the police officers." *Id*.

Williams is correct that Gruber-Hadley testified to these facts in her deposition. According to Williams, "Gruber-Hadley's testimony plainly demonstrates that she was not

7

coerced, tricked by, or lied to by Detective Williams.  As a result, the only conclusion to be drawn by a rational trier of fact is that Gruber-Hadley voluntarily consented to entry into her home for her son's arrest." *Id*., p. 12.

While Williams does not mischaracterize Gruber-Hadley's testimony, she does avoid more relevant passages–those which deal directly with the conversation between Gruber-Hadley and Williams, and those which clarify Gruber-Hadley's understanding or interpretation of what she was told.  It is true that Gruber-Hadley believed her son should be arrested, and it is true that she made arrangements for her daughter to be present at her house to let police in to effectuate the arrest.  In that respect, Williams is correct in arguing that Gruber-Hadley's consent was "voluntary."  But just because Gruber-Hadley admittedly "considered it inevitable and even necessary" that her son be arrested does not mean that she was not still lied to by Williams when the arrest was planned.  Put another way, the mere fact that Gruber-Hadley agreed (or at least accepted) that her son needed to be arrested does not vitiate her position that she was basically "tricked" into allowing police into her home when she did.  On that specific point, which again is at the heart of this case, Gruber-Hadley testified as follows:

> A.  I said, "so you're ready to arrest him, you have the warrant and everything?" That's what I said.  I don't recall saying anything else.
>
> Q.  But you do recall specifically asking about if there was a warrant.
>
> A.  Yes.
>
> Q.  Why did you ask about that?
>
> A.  Well, I meant do you have a warrant and everything, and I guess I meant do you have the case, do you have it all prepared, I mean you're ready to arrest him. That's what I meant.
>
> Q.  Why was that important?

> A.  Well, thinking back, I guess I was kind of surprised because [Detective Williams] hadn't said at the beginning of the conversation that they wanted to take him in for questioning or anything.  Something she said about bringing him in or picking him up, something I took to mean they were coming to arrest him.
>     So I said, "You have a warrant and everything, you're ready to arrest him?"
>     No, I said, "Do you have a warrant and everything?" is what I said.
>
> Q.  Those were the words you used?
>
> A.  I think so.
>
> Q.  In the form of a question?
>
> A.  Right.  It was in the form of a question.
>
> Q.  And what was her response to that question?
>
> A.  She said, "Yes, we have everything we need.  It's covered."

Dep. of Gruber-Hadley, pp. 22-23.  When asked by defense counsel whether she raised any objection during that conversation to the police going into her home to arrest her son, Gruber-Hadley answered: "No, I didn't make any objection.  The way she worded it they were ready to come and do it."  *Id*., p. 27.  Later in her deposition, Gruber-Hadley was recounting a conversation she had with her son soon after he was arrested.  She testified that she told him she believed the police had a warrant on the day they arrested him.  *Id*., p. 36.  When the issue of a warrant came up yet again during her deposition, Gruber-Hadley testified as follows:

> Q. . . . Do you remember specifically telling Detective Williams during the phone conversation that you would not allow the police into your home unless they had a warrant for your son's arrest?
>
> A.  I don't recall stating it that way.  I remember asking it as a question.
>
> Q.  Right.
>
> A.  I was assuming that she had one, and I said, "So you're all ready–you're ready to arrest him, you have a warrant and everything?"

9

> Q. And her response you've said twice now, "Yes, we have everything we need. It's covered." That's what you recall.
>
> A. Yes.
>
> Q. And from that you assumed that the–
>
> A. I was asking a question. I wasn't making a statement.
>
> Q. And from her answer you assumed that they did have an arrest warrant?
>
> A. She answered in the affirmative, so yes, I thought they did.

*Id*., pp. 44-45. Finally, recounting once again the conversation she had with her son after his arrest, Gruber-Hadley testified as follows:

> Q. When you spoke to Sean the next day, you specifically told him that one of the reasons you agreed to let the police in was because you were concerned that he might be hurt or killed otherwise.
>
> A. Okay. I said I had to, which I was assuming since there was a warrant I was assuming I had to. I couldn't just ignore a warrant for his arrest, which that was just understood on my part. *It just didn't occur to me that I had any choice*.

*Id*., pp. 45-46 (emphasis added).

Contrary to Williams's argument that Gruber-Hadley's "testimony plainly demonstrates that she was not coerced, tricked by, or lied to by Detective Williams[.]" the testimony actually appears to reinforce the Plaintiff's position. Gruber-Hadley testified unequivocally and repeatedly that she believed the police had a warrant to arrest her son. She believed this based on the statement made by Defendant Williams. This is the same statement the Seventh Circuit deemed "an outright and material lie." *Hadley v. Williams*, 368 F.3d at 749. Nothing in Gruder-Hadley's deposition testimony changes this essential fact.[2]

---

[2] Not only does Gruber-Hadley's deposition testimony reinforce the Plaintiff's argument with regard to his Fourth Amendment claim, it also does nothing to counter the Seventh Circuit's

10

In her memorandum and her reply brief, Williams also makes much of the fact that "Detective Williams never even used the word warrant during her telephone conversation with Gruber-Hadley." See, e.g., Reply Memorandum of Law in Support of Defendant's Motion for Summary Judgment, p. 3. According to Williams, this demonstrates that she never actively misled or lied to Gruber-Hadley and, presumably, Gruber-Hadley simply misunderstood the situation. But this argument is weak, since a jury could find that Williams's failure to use the word "warrant" may very well have been intentional and simply a component of her "outright and material lie."

The facts in this case, as they have been developed from deposition testimony, support the Seventh Circuit's opinion that Gruber-Hadley's "consent was conditioned on the police having a warrant, and they didn't . . . ." *Hadley v. Williams*, 368 F.3d at 749. As the Seventh Circuit also concluded, ". . . as long as Hadley's mother believed the claim [that the police had a warrant], and there is no reason to doubt that she did, her consent to the search was involuntary and does not bar a challenge to the lawfulness of the arrest . . . ." *Id.*[3]

For all these reasons, the motion for summary judgment must be denied, and it is for a jury to decide the issues of the lawfulness of Hadley's arrest, whether Williams is entitled to a

---

opinion that Williams is not entitled to summary judgment on the issue of qualified immunity under the circumstances of this case. The appellate court held that "[t]he principles on which we reverse are well settled, which precludes a defense of qualified immunity." *Id*. at 750 (citations omitted).

[3] In her motion, Williams also argues that Hickle had actual and/or apparent authority to let police into the home once they showed up there. But it is undisputed that Hickle was sent to the house by Gruber-Hadley to allow police to arrest Hadley. Given that the court finds, as did the Seventh Circuit, that Gruber-Hadley's consent was not voluntary, it is not necessary to address the "sub-issues" relating to Hickle's act of allowing the police to enter the property.

defense of qualified immunity, and whether Hadley is entitled to damages.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment filed by Defendant Hilda Williams is DENIED.

Date: October 11, 2005.

                                                                                           /s/   William C. Lee
                                                                                               William C. Lee, Judge
                                                                              United States District Court